NOT DESIGNATED FOR PUBLICATION

No. 116,839

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
J.R.B.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DANIEL T. BROOKS, judge. Opinion filed May 19, 2017.
Affirmed.

*James P. Ruane*, of The Law Office of James P. Ruane, of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*:  S.D. (Father), the natural father of J.R.B., appeals the district court's
termination of his parental rights. Having reviewed the record, we affirm the district
court's findings that Father is unfit and that Father's unfitness is unlikely to change in the
foreseeable future.

*Factual and procedural background*

When the State filed a child in need of care (CINC) petition involving J.R.B. in
April 2014, she was 12 years old. The allegations involved abuse allegedly done by her
biological mother (Mother). The petition noted that Father was incarcerated and had an

1

extensive criminal history. Father did not appear at the CINC adjudication hearing and was found to be in default.

One year later, the State filed a motion to terminate parental rights. The motion noted that Father was incarcerated and would be in custody until November 2016. The termination hearing was continued once to give Father more time to form a defense.

After a multi-day evidentiary hearing at which Father appeared, the district court terminated Father's parental rights. The district court did not clarify which factors of unfitness corresponded to which parent, but it found clear and convincing evidence of unfitness under K.S.A. 2016 Supp. 38-2269(b)(1), (b)(2), (b)(3), (b)(4), (b)(5), and (b)(8). Father appeals that decision. Mother has not appealed, although most of the factors set forth in these subsections apply solely to her. Accordingly, we review only those subsections most likely to apply to Father: his conviction of a felony and imprisonment, 38-2269(b)(5); and his neglect of J.R.B.'s emotional and physical needs, 38-2269(b)(4). Father challenges the findings of unfitness and that such unfitness is unlikely to change, but he does not argue that termination of parental rights is not in J.R.B.'s best interests. Therefore, we do not reach the best interests issue.

*Our legal framework*

A parent has a constitutionally protected and fundamental liberty interest in the relationship with his or her child. *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Thus the State may terminate one's parental rights only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are

2

"unlikely to change in the foreseeable future." The statute lists nine factors that singularly or in combination would amount to unfitness and four other factors for the court to consider if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(b), (c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record viewed in a light favoring the State as the prevailing party, that a rational factfinder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved in favor of the State.

Having found unfitness, the district court must then determine whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g)(1). The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews that decision only for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106; *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

*Need for a continuance*

Father's first argument is that he was prejudiced by his inability to meet with counsel and "bring all his evidence to trial." Father suggests that he could have presented some evidence that his unfitness was going to change in the foreseeable future.

On the first day of the termination trial, Father had been quickly transferred between facilities and was missing some documents he wanted to present. His counsel had not contacted him until that day. Father's counsel asked for a continuance at the beginning of the first day of the termination hearing, and the district court took that motion under advisement. Although Father did not have the desired documents with him that first day, the district court nonetheless allowed Father to testify about those documents. At the end of the second day of testimony, the district court continued the trial to a third day to allow Father to present additional evidence. On the third day of trial, Father testified again and presented exhibits. Accordingly, we find that Father is not entitled to relief on this point.

*Sufficiency of the evidence*

Father primarily contends that his efforts towards reintegration were ignored by the district court. Father appears to believe that the only reason for his termination was the delay caused by his incarceration, even though he expected to be released within 7 months of the termination hearing.

Because incarceration is one of the express factors to be considered by the court pursuant to K.S.A. 2016 Supp. 38-2269(b)(5), Father's incarceration alone could be sufficient evidence to support a conclusion of unfitness. As explained by the Kansas Supreme Court:

4

"When a nonconsenting parent is incarcerated and unable to fulfill the customary parental duties required of an unrestrained parent, the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability. It is obvious that a parent imprisoned for a long term cannot provide the customary parental care and guidance ordinarily required. If an imprisoned parent has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to determine the sufficiency of such efforts." *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987).

Evidence that a parent, while in prison, failed to maintain a parental relationship with his children may also support a finding that the parent neglected the emotional and physical needs of his children. *In re M.B.*, 39 Kan. App. 2d 31, 47, 176 P.3d 977 (2008).

Below, we review the evidence from the termination hearing. We conclude it fails to show that Father made reasonable attempts to contact and maintain an ongoing relationship with his daughter, both while he was in prison and while he was not.

Mother testified that Father was around for a "little bit of the time" during her pregnancy with J.R.B. In Mother's opinion, Father did not take advantage of opportunities to be near J.R.B., even when he was not incarcerated, and he was on parole by the time J.R.B. was born. Mother does not think that J.R.B. fully understands that Father is her biological parent. J.R.B. had met Father only once, in passing at a grocery store, when she was 3 or 4 years old. She has never lived with Father, and he has not had contact with her, aside from pictures, since 2007 or 2008. J.R.B. considered someone else to be her father.

Father admitted that, other than a brief period around J.R.B.'s birth, he was incarcerated for most of her life. He admitted he was convicted of aggravated burglary and aggravated assault in early 2000, was convicted of two counts of criminal restraint in 2008, and has been continuously incarcerated since May 2008. During the 2 and 1/2 years

5

of J.R.B.'s life that Father was not in custody he had little contact with her beyond an occasional phone call. He did not try to establish a relationship with his daughter at that time.

Father testified that he was due to be released in October 2016 if he did not lose any more good time credits. Father acknowledged a history of disciplinary reports but claimed he was motivated to improve his behavior after learning about J.R.B.'s circumstances. Yet at the time of his termination hearing on January 19 and 20, and February 2, 2016, Father was in segregation. Father thought it would be possible for him to provide full-time care for J.R.B., even while he is incarcerated, because he could get a job within the facility.

Father testified that J.R.B. knows him through letters, pictures, and telephone calls, although he was not allowed to speak with her while he was incarcerated. Father did not believe that it would be difficult for J.R.B. to come and live with him, but he did believe that J.R.B.'s wishes should be taken into consideration. Alison Despard, the family support worker, testified that J.R.B. does not talk about Father unless he is mentioned to her.

J.R.B. testified that she has been told Father is her biological parent but she does not look at him in that way. She would like to meet Father and get to know him at some point in the future, but not now. She did not know if she wanted to speak on the phone with him, stating it made her "uncomfortable" for Father to express his love for her because she thought of him as a pen pal and not as a parent.

Father did not have concrete plans for life after his release but testified that he had "several options." These options included a "Kansas Work One Program," placement at Oxford House, or moving to Oklahoma to be with his mother. Case workers were concerned about the future because Father had never demonstrated an ability to be

6

successful outside of prison. J.R.B. testified that she did not want to live with her grandmother in Oklahoma. She remembered meeting the grandmother once or twice but did not have an opinion about her. A case worker testified that the interstate placement request for grandmother's home had been denied.

During his incarceration, Father completed 15 programs in various subjects including parenting and anger management classes and mental health workshops. Father volunteered for these classes when they were offered at the facility. Despard characterized Father as polite and testified that he has always made appropriate requests for contact with J.R.B.

J.R.B. has been diagnosed with post-traumatic stress disorder, and she suffers from anxiety and nightmares. Father believed that he could help J.R.B. by meeting her and helping her to "re-establish her confidence" in herself. J.R.B.'s therapists believed that J.R.B. was not ready to have contact with Father.

It was Despard's opinion that Father did everything he could to stay in contact with J.R.B. But despite the fact that she could see Father and J.R.B. having a relationship, she did not believe that he was an appropriate reintegrative option for her. Because of Father's history, Despard felt that they would have to start "from the ground up" for her to feel comfortable placing J.R.B. with Father. A social worker had the same opinion. J.R.B. did not know Father and she had a great deal to process as she came to terms with the abuse she suffered. J.R.B.'s therapist testified that J.R.B. needs stability, which could take "quite a bit more time." She did not believe J.R.B. was ready to do anything but exchange letters with Father and that anything more would be inappropriate.

The district court noted that Father testified well and gave Father credit for all of the efforts that he made while incarcerated. But the district court could not ignore Father's lengthy history of incarceration or his lack of attention to J.R.B. during periods of

freedom. Nor could it overlook the tremendous amount of work and time it would take for Father to be an appropriate parent for J.R.B. Father and J.R.B. do not have a parent-child relationship upon which to build. And Father does not have any concrete plans for where he will live or what he will do after his release from custody.

> "A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

Accordingly, we find the district court's finding of unfitness is supported by clear and convincing evidence.

We also find clear and convincing evidence that Father's unfitness is unlikely to change in the foreseeable future. It is well established that, in cases such as this, the courts must work to decide cases in "child time" rather than "adult time." See *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002). It seems particularly important in this case, where J.R.B. is dealing with residual trauma from the actions that brought her in to custody.

The time in which Father would be able to gain release from prison, establish a residence and employment, and build a relationship with J.R.B. is simply too long. See *In re M.B*, 39 Kan. App. 2d at 47 (finding Father's condition was unlikely to change in foreseeable future when he had already been incarcerated for a substantial portion of the children's lives, had been incarcerated throughout the CINC proceedings, and was facing an additional 7 months of imprisonment); *In re D.T.*, 30 Kan. App. 2d at 1175 (finding a parent's incarceration for 10 additional months, in light of the parent's infrequent and superficial contact with the child while not incarcerated, sufficiently established the

8

parent's inability to change in the foreseeable future from the viewpoint of a child). J.R.B. should not be made to wait while Father rebuilds his life outside of confinement.

Clear and convincing evidence supports the district court's findings that Father is unfit due to his conviction of a felony and imprisonment, coupled with his neglect of J.R.B.'s emotional and physical needs, see K.S.A. 2016 Supp. 38-2269(b)(4),(b)(5), and that his unfitness is unlikely to change in the foreseeable future.

Affirmed.