(56 P.3d 840)
No. 88,368

In the Interest of D.T., a Minor Child
(D.O.B. 10/02/99)

 Opinion
filed October 25, 2002. 

*Patricia Aylward Kalb*, of Kansas City, for appellant putative natural father.

*Sheryl A. Bussell*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, C.J., BEIER, J., and BRAZIL, S.J.

BEIER, J.: Putative natural father C.H. appeals the termination of his parental rights to D.T.

D.T. was born on October 2, 1999. Within 6 weeks, a child in need of care (CINC) petition was filed, describing D.T.'s father as unknown. D.T. was placed in the custody of the Secretary of Social and Rehabilitation Services (SRS), where she remained at the time of the district court hearing on C.H.'s rights.

The district court terminated the rights of D.T.'s natural mother but was forced to continue the matter because the putative natural fathers had not received sufficient service of process. One putative natural father's rights were eventually terminated, and the court held a hearing on November 7, 2001, as to C.H.

C.H. testified that he had a year-long sexual relationship with the natural mother of D.T., during which D.T. was conceived. C.H. admitted that he had held D.T. only twice since she was born, both times before he was incarcerated in August 2000. He had not had any contact with D.T. or supported her for more than a year. C.H. also admitted that he did not know whether D.T. was his daughter, but he stated that he wanted to take sole custody of her if he was determined to be her father. C.H. asked the court to continue the hearing for 10 more months until he was released from prison.

The district judge terminated C.H.'s rights at the conclusion of the hearing, saying:

"All right. Mr. [H.], I appreciate what's in your heart; but I can't wait ten months for you to get out of jail and then how ever many months it would be after that for you to get yourself set up and in a position to maybe take care of this child. This child has been in the legal custody of the state of Kansas since November of 1999. Basically all but one month of her life has been in the custody of the State. You apparently have con—had some on-again and off-again problems with the

criminal justice system and have been in a — been locked up for a good portion of that time. As a result of that, you haven't been able to provide any support. You haven't been able to visit. You haven't been able to maintain conduct — or contact and communication. You simply, for the last two years, haven't been able to adjust your condition to meet the needs of this child, and I can't wait another year or past that."

". . . [S]o I am going to find . . . pursuant to K.S.A. 38-1583(a), that you are unfit, that your parental rights should be terminated; and this, I do not believe, is going to change in the foreseeable future. In these cases, we look at in what we call 'child time' and not 'adult time'; and another year, year and a half is an awful long time in the life of a two year old child to wait and see if maybe you could get together and — be a father. Therefore, I am ordering your rights terminated. I believe the facts I have discussed cover those statutory factors found in K.S.A. 38-1583(b)(4), (b)(8), (c)(2); and under 38 -1583(e) giving primary consideration to the physical, mental, and emotional needs of the minor child, it's abundantly clear to me that I need to terminate the father's rights so that SRS can retain custody with the Court's consent to adopt and continue to take steps to find a permanent home for this child."

The standard of review in an appeal from a termination of parental rights case is whether substantial competent evidence in the record supports the district court's finding that the parent is unfit. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. The appellate court reviews the evidence in the light most favorable to the party prevailing below and does not reweigh the evidence or substitute its judgment for that of the district court. *In re C.C.,* 29 Kan. App. 2d 950, 952, 34 P.3d 462 (2001).

C.H. argues the district court lacked substantial competent evidence to find that he was unfit and that it was in D.T.'s best interest to terminate his rights.

K.S.A. 2001 Supp. 38-1583(a) provides that, once a child has been adjudicated to be a child in need of care, the court may terminate parental rights if it "finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." The statute provides a nonexclusive list of factors the district court may consider, and subsection (e) provides that the ex-

istence of any one of the factors alone may establish grounds for termination. K.S.A. 2001 Supp. 38-1583.

In this case, the district court relied upon physical, mental, or emotional neglect of D.T.; C.H.'s lack of effort to adjust his circumstances, conduct, or conditions to meet D.T.'s needs; and C.H.'s failure to maintain regular visitation, contact, or communication with D.T. See K.S.A. 2001 Supp. 38-1583(b)(4), (b)(8), and (c)(2).

The record amply supports the existence of these factors favoring termination.

C.H.'s contact with D.T. was dramatically infrequent and superficial, even when the time and tandem incapacity of his incarceration is eliminated from the calculus. He also admitted that he had not contacted or supported D.T., although, in our view, these activities would not necessarily have been prohibited by his prison time. The additional delay before he could assume more direct parenting also was fair game for consideration. C.H.'s argument that a further wait of 10 months was reasonable because it would be in D.T.'s best interest to live with her natural father glorifies his momentary contribution to her creation over her need for a permanent and stable home. He fails to recognize that the courts must strive to decide these cases in "child time," rather than "adult time." See *In re C.C.*, 29 Kan. App. 2d 950, Syl. ¶ 2. D.T. had already spent all but 1 month of her short life in State custody; the district court was justified in finding that 10 additional months were more than C.H.—or we—should ask of her.

Affirmed.