NOT DESIGNATED FOR PUBLICATION

No. 113,467

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of C.R.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed December 11, 2015. Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural mother.

*David W. Chowins*, of Chowins Law Firm, LLC, of Olathe, for appellant natural father.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before HILL, P.J., PIERRON and POWELL, JJ.

*Per Curiam*:  E.D. (Mother) and J.R. (Father), the natural parents of C.R., appeal the district court's decision to terminate their parental rights. Based on a review of the record, we find clear and convincing evidence supports the district court's determination that Mother and Father are unfit and that the conduct or condition rendering them unfit is unlikely to change in the foreseeable future. We also find the district court did not abuse its discretion in finding termination would be in C.R.'s best interests. Therefore, we affirm the district court's decision.

1

On September 19, 2013, within a month of C.R.'s birth, the State filed a petition seeking to adjudicate C.R. as a child in need of care (CINC). The State's petition revealed that Mother and Father already had a history with the Department for Children and Families (DCF) relating to C.R's older sibling, O.D. DCF had received five previous reports regarding the welfare of O.D. before O.D. was removed from the home at 9 months old. The previous reports involved concerns regarding the cleanliness and conditions in the house, including issues related to animal urine and feces, the parents' inability to properly care for O.D., and the parents' mental health.

At the time the State filed the CINC petition relating to C.R., Mother was working through a reintegration plan with O.D. Mother had weekly visits with O.D., and such visits required monitoring when Father attended due to Father's history of fitful behavior. Compounding the State's concern with Father's mental health was Father's noncompliance with his medication.

During a walkthrough of Mother and Father's home after O.D. was removed but prior to C.R.'s birth, there was significant clutter, an ongoing cockroach infestation, pill bottles out in the open, a strong smell of pet urine, and the family refused to allow the worker access to both bedrooms despite the visit being an intended full walkthrough of the home. Additionally, there were issues of overcrowding with five adults living in a two-bedroom house—Mother and Father slept in one bedroom, Father's special-needs sibling slept in the other bedroom, and Father's parents slept on a bed in the living room. Finally, there were no supplies on hand for taking care of C.R., who was due to be born in approximately 2 months.

Based on the living conditions in the home, as well as the lack of progress made in O.D.'s case, C.R. was adjudicated a CINC on November 19, 2013. The district judge ordered a 4-month reintegration plan for Mother and Father.

Leanne Arnold, the case manager in O.D.'s case, was assigned as the case manager in C.R.'s case. After meeting with Mother and Father in December 2013, Arnold created a reintegration plan for C.R. that was signed by the parents and approved by the district judge. The plan generally mandated the following tasks: (1) maintain a clean and proper home environment, (2) participate in mental health services including individual therapy for each parent, (3) obtain and maintain employment, (4) demonstrate appropriate parenting skills during visitations, (5) follow a written transportation plan, and (6) provide documentation necessary to verify goals. The plan also provided that Mother and Father would be financially responsible for all costs incurred by the outlined tasks.

A.    *The parents' performance of the reintegration plan*

At the subsequent termination hearing, Arnold testified that Mother and Father did not successfully complete the reintegration plan and at no point did Arnold believe that that C.R. could be returned to Mother and Father.

1.    *Home Environment*

With respect to whether Mother and Father maintained a clean and proper home environment, Arnold testified that at the time she undertook C.R.'s case, and throughout Arnold's first two drop-in visits, Mother and Father were still living in the cramped and seriously unclean conditions of the paternal grandparent's house. In May 2014, Mother and Father obtained their own two-bedroom apartment. Setting aside some light clutter and a sharp thumb tack found on the ground, the apartment was clean and Arnold

considered it suitable for C.R. so long as Mother and Father kept the bedroom doors closed.

Monitored visitation with C.R. was extended to the apartment. In September 2014, Arnold visited the apartment and found it not appropriate for visitation with children due to some of the same concerns that had arisen in the paternal grandparents' home—she found dishes with food and trash in the parents' bedroom, and the parents had obtained a dog that had fleas. Arnold conditioned her future in-home visits on the parents obtaining proof of immunizations and flea treatment for the dog but never received such proof. Mother testified that she did not have enough money to take the dog to a veterinarian for immunizations but she did treat the dog's flea problem with flea shampoo.

In sum, Arnold believed the parents had failed to maintain suitable housing during the course of the reintegration plan.

2.    *Mental Health*

Next, Arnold testified whether Mother and Father adequately participated in mental health services throughout the reintegration plan. Mother and Father each submitted to mental health evaluations. Mother was diagnosed with major depression disorder and posttraumatic stress disorder; Father was diagnosed with unspecified anxiety and depressive disorders.

Arnold was able to confirm with Mother's therapist that Mother had attended therapy sessions in November and December 2013. Arnold did not receive any further confirmation of therapy sessions, although Mother claimed she continued attending therapy sessions once a month.

Arnold only had proof that Father attended regular therapy sessions throughout November and December 2013. Father was also required to submit to a second psychological evaluation because he was objectively dishonest during his first evaluation. Arnold had no evidence that Father followed the recommendations from his second evaluation. Furthermore, Father was required to participate in medication management but refused on religious grounds.

3. *Employment*

Mother and Father were each required to submit proof of employment throughout the reintegration plan. Mother provided Arnold with proof that she worked at Salvation Army in November and December 2013 and Subway in January and/or February 2014. Mother also provided proof of her employment at Sheridan's in April 2014. The information indicated that Mother was not working full-time.

Father provided evidence that he was working varied hours at Subway from January to February 2014. He also provided proof that he was working part-time at Jimmy John's in May 2014.

4. *Visitations*

During visitations, Mother and Father were judged on their ability to care for C.R. Arnold testified that Father missed seven scheduled visits with C.R., three being without alerting anyone ahead of time. Mother missed six visits, three being without alerting anyone ahead of time. Mother and Father's attendance improved when one of the weekly visits began occurring at their apartment.

C.R., who had colic, often cried during visits. Mother and Father generally attempted to soothe C.R. Arnold testified that during several scheduled visits, however,

Mother and Father ceased trying to comfort C.R., opting instead to pass her back and forth while complaining about the pain associated with holding her. C.R.'s foster mother similarly testified that she was concerned when Mother and Father complained about such pain. The foster mother also testified that Mother and Father did not have adequate supplies to care for C.R. during visits.

Finally, there were concerns about Father's behavior during visits. He would get emotional and cry and had to be encouraged to leave the room when he was having an emotional outbreak. This occurred 3 or 4 times. Father would also talk to C.R. about her placement, reiterating that C.R.'s foster mother was not her real mother and that she would not always be there for her. Father apparently repeated such statements over and over.

5. *Transportation*

Arnold testified that she had no concerns regarding Mother and Father's transportation plan.

B. *The district court's ruling*

Following the testimony, the district judge took the case under advisement and, on January 20, 2015, terminated Mother and Father's parental rights. Mother and Father each submitted a timely notice of appeal.

ANALYSIS

Mother and Father argue the State did not meet its burden of showing they were unfit by reason of conduct and that this conduct or condition was unlikely to change in the foreseeable future.

6

In order for the district court to terminate parental rights, the State must prove by clear and convincing evidence that (1) the parent is unfit and (2) the conduct or condition which renders the parent unfit is unlikely to change in the foreseeable future. K.S.A. 2014 Supp. 38-2269(a). The State also must prove, albeit only by a preponderance of the evidence, that termination is in the best interests of the child. K.S.A. 2014 Supp. 38-2269(g)(1); see *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014).

Notably, our standard of review on appeal necessarily depends on the State's burden of proof at the termination proceedings. If the issue on appeal relates to the district court's decision regarding current and future unfitness, the appellate court reviews all the evidence, in the light most favorable to the State, to determine whether it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that a parent is unfit and the conduct or condition rendering the parent unfit is unlikely to change in the foreseeable future. *In re B.D.-Y.*, 286 Kan. 686, 691, 705, 187 P.3d 594 (2008). If, however, the issue presented on appeal relates to a decision regarding the best interests of the child, the decision is reviewed for abuse of discretion. *In re R.S.*, 50 Kan. App. 2d at 1116. In this appeal, Mother and Father raise issues related to their current unfitness, future unfitness, and the best interests of C.R.

A.    *Unfitness*

K.S.A. 2014 Supp. 38-2269(b) and (c) provide a nonexclusive list of factors a district court should consider when determining whether a parent is unfit. "The existence of any one of the . . . factors standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2014 Supp. 38-2269(f). Here, the district court relied on the following five statutory factors in determining Mother and Father were unfit to properly care for C.R.:

- K.S.A. 2014 Supp. 38-2269(b)(7) ("failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family");
- K.S.A. 2014 Supp. 38-2269(b)(8) ("lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child");
- K.S.A. 2014 Supp. 38-2269(c)(1) ("[f]ailure to assure care of the child in the parental home when able to do so");
- K.S.A. 2014 Supp. 38-2269(c)(2) ("failure to maintain regular visitation, contact or communication with the child or with the custodian of the child"); and
- K.S.A. 2014 Supp. 38-2269(c)(3) ("failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home").

Viewing the evidence in the light most favorable to the State, we agree with the district court's determination of unfitness. Arnold's final visit revealed that Mother and Father's apartment was unfit for children. The parents counter that Arnold had not visited the apartment in the 3 months leading up to the termination hearing and claim that the conditions in their apartment had improved. Because this court views the evidence in the light most favorable to the State, we need not make inferences in favor of the parents. As explicitly provided in the reintegration plan, it was the parents' responsibility to provide proof of their progress in the plan, and they had not done so with respect to the condition of their home. Thus, the district court properly relied upon K.S.A. 2014 Supp. 38-2269(b)(8) and K.S.A. 2014 Supp. 38-2269(c)(1).

Additionally, Mother and Father were unable to afford to provide proof of proper veterinary treatment and immunizations for their dog, lending credence to the concern that they also could not afford proper medical treatment for C.R. The concerns related to the parents' apparent inability to afford basic pet care are exacerbated by the inconsistent,

8

part-time employment of both parents during the reintegration plan. Thus, a rational factfinder could find it highly probable that Mother and Father simply could not afford to care for C.R., again validating the district court's reliance on K.S.A. 2014 Supp. 38-2269(b)(8) and K.S.A. 2014 Supp. 38-2269(c)(1).

We are also concerned by the parents' inadequate participation in mental health services required by the reintegration plan. The plan mandated that both parents participate in mental health services, including individual therapy for each parent. Following their mandated psychological evaluations, Mother and Father provided proof only that they attended therapy sessions in November and December 2013. Notwithstanding Father's refusal to take the medication prescribed by a mental health professional, his objective dishonesty during his first court-mandated psychological evaluation, and his erratic behavior during visits with C.R., we conclude that neither parent provided proof that they fully participated in mental health services as mandated in their reintegration plan. This amounted to clear and convincing evidence of unfitness and allowed the district court to properly find the parents unfit pursuant to K.S.A. 2014 Supp. 38-2269(b)(8) and K.S.A. 2014 Supp. 38-2269(c)(3).

On the topic of visitation, we note that Father missed seven visits and Mother missed six visits throughout the reintegration plan. In *In re E.H.*, No. 94,305, 2006 WL 90109, at *6 (Kan. App. 2006), this court found substantial competent evidence supported the trial court's finding of unfitness when the parents missed five scheduled visits in the 4 months preceding the termination hearing. Here, the parents missed more visits but grew far more consistent in their attendance in the months leading up to the termination hearing. Thus, reasonable minds may differ as to whether the district court properly relied on K.S.A. 2014 Supp. 38-2269(c)(2) when finding the parents unfit. However, viewing the evidence in the light most favorable to the State, we find clear and convincing evidence that the parents failed to maintain regular visitation.

9

In any event, there is clear and convincing evidence that Mother and Father failed to meet the requirements of their reintegration plan, which alone may serve as a proxy for unfitness pursuant to K.S.A. 2014 Supp. 38-2269(c)(3). We note that both parents made progress in their plans, and reasonable people may disagree as to the correct resolution of this case. However, bound by our standard of review and noting that the district judge was in the optimal position to render this decision, we will not alter the district judge's finding that Mother and Father were unfit.

B.     *Future unfitness*

The parents argue that the district court was precluded from correctly finding that their unfitness was unlikely to change in the future due to the rapid pace at which the case progressed. According to the parents, there was simply not enough time from which to properly judge whether their circumstances, conduct, or condition was likely to change in the future.

Whether a parent's circumstances, conduct, or condition is likely to change in the foreseeable future is assessed from the viewpoint of the child, not the parent, because a child's perception of time differs from an adult's perception. *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008). Thus, courts must decide what constitutes the foreseeable future in "'child time'" rather than "'adult time.'" *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002).

The factual existence of parental unfitness can be judicially predicted from a parent's past history. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). It is clear from the record in this case that Mother's and Father's unfitness was not likely to change in the foreseeable future. At the time of C.R.'s birth, the parents had already lost custody of C.R.'s sibling. The parents had failed to complete that child's reintegration plan at that time, just as they failed to adhere to the reintegration plan in this case. Thus,

the evidence in this case was sufficient for the district judge to conclude that Mother's and Father's unfitness would not change in the foreseeable future as their unfitness has apparently spanned years.

C.     *Best Interests of C.R.*

Finally, Mother and Father contend the district court abused its discretion in finding that termination of their rights was in the best interests of C.R.

An appellate court reviews the district court's best-interests determination under the abuse-of-discretion standard. *In re R.S.*, 50 Kan. App. 2d at 1116. Abuse of discretion "occurs when no reasonable person would agree with the district court." *In re R.S.*, 50 Kan. App. 2d at 1116. In considering termination, the court should give primary consideration to the child's physical, mental, and emotional needs. K.S.A. 2014 Supp. 38-2269(g)(1).

The district judge found that termination of Mother's and Father's parental rights was in C.R.'s best interests because C.R. was "very young and need[ed] permanency." C.R. had been out of the custody of her parents virtually her entire life. Combining this with the ongoing (and possibly unmet) mental health needs of both parents and their apparent lack of adherence to two separate reintegration plans, a reasonable person could agree with the district court's determination. Thus, we conclude the district court did not abuse its discretion in holding that termination of parental rights was in the best interests of C.R.

Affirmed.