NOT DESIGNATED FOR PUBLICATION

No. 119,330

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.F.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY D. KEITH, judge. Opinion filed November 2, 2018. Affirmed.

*Grant A. Brazill*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and ROBERT J. FREDERICK, District Judge, assigned.

PER CURIAM:  Father appeals the district court's termination of his parental rights to his four-year-old son, D.F. Father contends the district court abused its discretion by ruling that termination was in the best interests of D.F. and by denying Father's motion for a new trial. After a careful review of the record, we affirm the district court's actions.

FACTUAL AND PROCEDURAL HISTORY

On July 23, 2017, Wichita police officers conducted a welfare check on three-year-old D.F. after a tip was received through Crime Stoppers that Father was planning to secure D.F. in a car seat and leave him in the seat with the purpose of killing him. Police

1

officers first made contact with Mother. Mother informed them that she and Father had argued the previous morning and that Father took D.F. with him. Father demanded D.F.'s car seat but Mother refused to give it to him. Mother appeared to be under the influence of drugs, became aggressive with officers, and was arrested on a warrant. Officers then met with Father. Father explained that he had custody of D.F. and Mother had supervised visits. He was currently homeless, staying with various friends and at the Inter Faith Inn. He did not have any money for food or rent but would be receiving his disability check on August 3, 2017. Officers placed D.F. in police protective custody.

Two days later, the State filed a child-in-need-of-care (CINC) petition. The district court held a temporary custody hearing and determined it was in the best interests of the child to remain in the temporary custody of the Department for Children and Families (DCF) in an out-of-home placement.

On September 11, 2017, the State filed an amended CINC petition and a motion for finding of unfitness and termination of parental rights. The State alleged both parents were unfit and their conduct was unlikely to change in the foreseeable future based on three factors: (1) their use of intoxicating liquors or narcotics or dangerous drugs of such duration or nature as to render the parents unable to care for the ongoing physical, mental, or emotional needs of the child under K.S.A. 2017 Supp. 38-2269(b)(3); (2) the failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family under K.S.A. 2017 Supp. 38-2269(b)(7); and (3) the lack of effort on the part of the parents to adjust their circumstances, conduct, or conditions to meet the needs of the child under K.S.A. 2017 Supp. 38-2269(b)(8).

On November 17, 2017, Father stipulated that he was presently unfit. In exchange, the State agreed to continue the termination hearing to give Father more time to complete the existing court orders and demonstrate stability. The parties agreed to limit the issue going forward to Father's unfitness for the foreseeable future. Father stipulated to and the

district court adopted the factual allegations made by the State in its amended CINC petition and motion for finding of unfitness and termination of parental rights.

On December 19, 2017, the district court adjudicated D.F. a child in need of care and terminated Mother's parental rights. Mother has not appealed, and her termination is not at issue here.

On February 26, 2018, the district court held a hearing to determine whether Father's unfitness was likely to change in the foreseeable future. The following evidence was presented:

- Father was a drug addict and had positive urinalysis (UA) test results for methamphetamine as recently as December 8, 2017 and December 12, 2017.
- Father failed to take two of his required drug tests in January 2018, thereby creating a presumption that the tests would have been positive.
- Father had a positive hair follicle test for methamphetamine as recently as December 2017.
- Father lacked a consistent home environment in that he had moved six times since this case was filed.
- Father had lived with a methamphetamine user as recently as January 2018.
- Father had lived at his current home—Liberty Way Apartments, a sober living community—for about two months.
- Father had stable employment—at Great Clips—for about two months.
- Father was limited to part-time employment because he needed to remain eligible for disability income to afford his medication.
- Father had recent criminal convictions for offenses committed in June 2017, including possession of methamphetamine, possession of a weapon by a convicted felon, and driving while his license was suspended; he was in jail in

September and October 2017 for violating the conditions of his bond by testing positive for methamphetamine; and he was currently on probation.

- Father had a history of criminal convictions including a 2014 conviction for forgery.

- Father was still married to Mother because he could not afford a divorce, although the two were not together, and Mother had been abusive to Father and her children.

- Father's driver's license was revoked for the next three years.

- D.F. had several behavioral issues including hitting adults and other children, pulling hair, and severe tantrums.

- D.F. had five different placements during his time in DCF custody because of his behavioral issues, and no adoptive resource had been identified.

- This was not the first time that D.F. had been placed in DCF custody. D.F. was placed in custody as a child in need of care in February 2014. He was, however, reintegrated with his parents, and the case was closed in October 2014.

- D.F. and Father were bonded, their interactions were always positive, and D.F. did not exhibit any negative behavior during their visits.

- Father had participated in individual therapy since 2014.

- Father had successfully completed a substance abuse program in 2014 but subsequently relapsed.

- Father was currently engaged in substance abuse treatment and leading a weekly Narcotics Anonymous meeting.

- Father had negative UA test results on December 14, 2017; December 28, 2017; January 19, 2018; and January 30, 2018.

- Father asserted he submitted to UA testing to obtain his apartment at Liberty Way, for his probation officer, and for substance abuse treatment in January 2018, and the test results were all negative.

- Father had completed a parenting course.
- Father would move into a two-bedroom apartment at Liberty Way if D.F. were reintegrated with him.

At the hearing, Lizabeth Rinehart, a permanency specialist for Saint Francis Community Services and a licensed social worker, testified that Father needed to have at least six months of stable employment, housing, and sobriety before she would write a reintegration plan. She recommended that the district court terminate Father's parental rights, and she testified that termination was in D.F.'s best interests.

Finally, Michael Cleary, the guardian ad litem for D.F., recommended that the court delay its ruling on Father's future unfitness for 90 days. He reasoned that D.F. would have a hard time getting adopted due to his behavioral problems and therefore reintegration with Father would happen sooner than adoption. He recounted the family support worker's testimony that D.F. acted differently around Father—D.F. had no behavioral issues around Father—and they were bonded. He doubted that Father would make it but wanted to be wrong.

From the evidence adduced, the district court found the following:

"I have no doubt that [Father] loves his son and is bonded, and I'm sure he believes he has changed and wants to continue that change. He's shown that he's able to get a job, he got into treatment, he has a place to live in the future that his son can go live with him. I note that he's completed the parenting class and that he has regular visitation. However, in looking at the foreseeable future, the best interest is the past—past behaviors.

"The Court also has to look at this case in child time. I note this is the second time that young [D.F.] has been in the Child in Need of Care system . . . . And he has been in custody approximately half his life.

"I note that [Father] and the mother are still married, and that's despite her rights being terminated. . . . I don't believe there's any . . . reason for stopping the divorce, except

the money, but there are pro se forms to get the divorce started, knowing Mother's rights were terminated.

"The big one, however, is the sobriety. . . . [There were] positive UAs after the case started, dirty after his incarceration, dirty after the first sober living place. It was dirty while his criminal case was pending, and it continued to be dirty even after the stipulation for unfitness. We have the first part of January with no UAs. So the best I have right now is from the middle of January through the end of February, so approximately six weeks of sobriety. The December positive UAs, I can't accept the reasons given, that it was a false positive because he was around people who were using. And even if it was true that he was around people using illegal drugs, the Court would wonder why. Knowing the triggers, knowing—having been through treatment before, why, if you're trying to get your child back, would you be in a location where there's knowing illegal drug use going on, you've got a criminal case going on, and trying to reintegrate?

"I note that he's been through treatment before. . . . I understand that with addiction there are going to be periods of relapses. [Father] admits it's a mistake. . . . [T]his case resulted in criminal convictions, but it is not part of being a successful parent and to have reintegration."

The district court also found by clear and convincing evidence that Father would be unfit for the foreseeable future under the following factors:

- K.S.A. 2017 Supp. 38-2269(b)(3)—His use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render him unable to care for the ongoing physical, mental, or emotional needs of the child;
- K.S.A. 2017 Supp. 38-2269(b)(7)—The failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family; and
- K.S.A. 2017 Supp. 38-2269(b)(8)—The lack of effort on the part of the parent to adjust his circumstances, conduct, or conditions to meet the needs of the child (specifically, the drug use).

6

While the district court also considered Father's conviction of a felony as a factor of his unfitness, K.S.A. 2017 Supp. 38-2269(b)(5) requires "conviction of a felony and imprisonment." The element of imprisonment was not considered.

The district court then moved to the best-interests determination. The district court noted its respect for the guardian ad litem but found termination of Father's parental rights was in the best interests of D.F. In so finding, the district court stated that it gave primary consideration to the physical, mental, and emotional needs of the child.

Father filed two posttrial motions: a motion to alter or amend the judgment as to the finding that termination of his parental rights was in the best interests of the child and a motion for a new trial. The motion for a new trial was based on a negative hair follicle test Father voluntarily undertook on March 5, 2018. After a hearing, the district court denied both motions.

Father timely appeals.

I.      DID THE DISTRICT COURT ABUSE ITS DISCRETION BY RULING THAT TERMINATION OF FATHER'S PARENTAL RIGHTS WAS IN THE BEST INTERESTS OF D.F.?

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. Before a parent can be deprived of the right to the custody, care, and control of the child, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008); see also *In re X.D.*, 51 Kan. App. 2d 71, 73-74, 340 P.3d 1230 (2014) (the right to be the legal parent of a child is a fundamental right).

The Revised Kansas Code for Care of Children, K.S.A. 2017 Supp. 38-2201 et seq., provides that the district court may terminate parental rights when a child has been adjudicated a child in need of care and the court "finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a). The statute next lists nine nonexclusive factors the district court shall consider in making a determination of unfitness. K.S.A. 2017 Supp. 38-2269(b). The district court must also consider a separate list of four additional nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2017 Supp. 38-2269(c). Any one of the factors in K.S.A. 2017 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f). Father does not challenge the court's unfitness finding.

After the court has determined a parent is unfit, termination is not mandatory. Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g)(1). In making such a decision, the district court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2017 Supp. 38-2269(g)(1).

This court reviews the court's best-interests determination for abuse of discretion. An abuse of discretion

> "occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014).

Father contends that the district court abused its discretion by determining that immediate termination of Father's parental rights was in D.F.'s best interests. He argues the court disregarded the guardian ad litem's opinion. For support, he references the strong bond between Father and D.F.; that Father had made significant progress on the case plan goals; that D.F. exhibited behavioral issues when he was not with Father; and that D.F. would have a hard time being adopted. From this, he argues no reasonable person could conclude that termination of Father's rights was in D.F.'s best interest.

In making the best-interests determination:

"[T]he court must weigh the benefits of permanency for the children without the presence of their parent against the continued presence of the parent and the attendant issues created for the children's lives. In make such a determination, we believe the court must consider the nature and strength of the relationships between children and parent and the trauma that may be caused to the children by termination, weighing these considerations against a further delay in permanency for the children." *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010).

Father likens his case to *In re K.R.*, where another panel of this court reversed a district court's termination of parental rights, finding that the district court failed to consider whether termination was in the best interests of the children.

"We recognize that mother may not be the best model of motherhood, but this case is devoid of many factors present in other cases of this nature. There are no allegations of abuse, no allegations of addiction, no allegation of filthy living conditions, no allegations of a dangerous relationship with a boyfriend, and no allegations of lack of interest in the children. Instead, mother's apparent relationship with the children led to a strong plea from the guardian ad litem to reunite the family. Although children are entitled to permanency in child time, see *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002), there is no fixed deadline of 1 year for reintegration, as suggested by some of the witnesses here. The totality of these circumstances convinces us that the best interests of

9

these children—'who want to be with mama'—were not served by a termination of mother's parental rights." 43 Kan. App. 2d at 904-05.

Be that as it may, the district court in the present case expressly found that termination of Father's rights was in D.F.'s best interests; that Father's addiction and recent drug use was a big concern; that Father was still married to Mother, who was abusive and whose parental rights were already terminated; and although the guardian ad litem advocated that the decision whether to terminate Father's rights be postponed, he did not advocate for immediate reunification as did the guardian ad litem in *In re K.R.* See 43 Kan. App. 2d at 894-95. Instead, the guardian ad litem doubted whether reintegration would ever ultimately be possible when he observed, "I, in my heart, feel that [Father's] not going to make it, but I would like to be wrong about that."

The court did not disregard the guardian ad litem's opinion. The court simply noted that it had to stop and think about its decision, and that while it respected the guardian ad litem, it ultimately disagreed with him.

This case is admittedly difficult because reasonable people could conclude that termination was not in D.F.'s best interests due to the strong bond with Father, that visits were going well, that Father was doing everything he needed to do during the six weeks prior to the hearing, and that an adoptive resource for D.F. was lacking. Moreover, the court terminated Father's parental rights only seven months after the CINC petition was filed, and the guardian ad litem advocated for giving the Father more time to comply. However, the best-interests determination is a discretionary decision, and this court can reverse the district court's decision only if no reasonable person could conclude termination was in D.F.'s best interests or if the court made an error of fact or law. See *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010.

10

Another panel of this court stated in *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008):

> "Cases like this are difficult ones. A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time."

Evidence in the record supports the district court's decision, including the following: D.F. had spent about a third of his life in DCF custody; Father used methamphetamine even after he stipulated to his present unfitness and was given a final chance to show that he would not be unfit for the foreseeable future; Father was on probation and further drug usage could land him back in jail; and Father had only maintained stable housing and employment for two months. Rinehart testified that termination of Father's parental rights was in D.F.'s best interests because D.F. needed a consistent caregiver for his developmental, behavioral, and mental and physical health needs. Rinehart's report, prepared in February 2018, indicated that D.F. was diagnosed with adjustment disorder and was receiving treatment. He had been in a consistent foster home since September 2017, he referred to his foster parents as "mom" and "dad," and he seemed bonded to them.

Ultimately, the district court did not abuse its discretion in finding that termination of Father's parental rights was in the best interests of D.F.

II.     DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING FATHER'S MOTION FOR A NEW TRIAL?

The district court may, on motion, grant a new trial based on "newly discovered evidence that is material for the moving party which it could not, with reasonable

11

diligence, have discovered and produced at trial." K.S.A. 2017 Supp. 60-259(a)(1)(E). "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones and direct the entry of a new judgment." K.S.A. 2017 Supp. 60-259(a)(2).

In this case, Father filed a motion for a new trial based on a negative hair follicle test result. He voluntarily underwent testing on March 5, 2018, after the trial. In his motion, Father requested a new trial or, in the alternative, for the district court to reopen the judgment, take additional testimony, and/or amend its findings of fact and conclusions of law.

The district court denied the motion, finding that, though the evidence may be "new," it was not evidence that Father would have offered at trial because he could not, with reasonable diligence, have discovered or produced it.

It is within the discretion of the trial court to grant or deny a new trial under K.S.A. 2017 Supp. 60-259(a). A ruling on a motion for new trial will not be disturbed on appeal except upon a showing of abuse of discretion. *Miller v. Johnson*, 295 Kan. 636, 684, 289 P.3d 1098 (2012).

To establish the right to a new trial based upon newly discovered evidence, the movant must establish (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence and (2) that the newly discovered evidence "is of such materiality that it would be likely to produce a different result upon retrial." *State v. Warren*, 302 Kan. 601, 615, 356 P.3d 396 (2015). In determining whether new evidence is material, the district judge must assess the credibility of the newly proffered evidence. The appellate court will not reassess the district judge's determination of credibility from such a hearing. See 302 Kan. at 615-16.

12

Father contends the district court abused its discretion by denying his motion for a new trial when he presented a subsequent hair follicle test result. He contends that the hair follicle result contradicts the urinalysis test results that were positive in December because a negative hair follicle result indicated sobriety for approximately 90 days. He argues he could not have presented this evidence at trial because he wanted to show longer-term sobriety.

Father's argument fails for several reasons. First, the evidence is better characterized as newly created rather than newly discovered. Father could have submitted to hair follicle testing in February 2018 and produced the result before trial. His attorney called it a "strategic" choice to have testing done after trial. But the fact that Father was sober the week after the termination hearing is not relevant to whether his parental rights should have been terminated at the hearing. Moreover, if the court were to consider it, one additional week of sobriety is not really material—it does not demonstrate long-term sobriety.

Second, at the termination hearing, Father eventually admitted he used methamphetamine in December 2017. Thus the district court did not need to reopen its judgment for testimony concerning whether the March 2018 hair follicle result invalidated the December 2017 urinalysis test results.

Third, the district court considered the possibility that Father was merely around other people using methamphetamine in December 2017. As a part thereof, the court intimated that this would not make a difference in the court's judgment:

"The December positive UAs, I can't accept the reasons given, that it was a false positive because he was around people who were using. And even if it was true that he was around people using illegal drugs, the Court would wonder why. Knowing the triggers,

knowing—having been through treatment before, why, if you're trying to get your child back, would you be in a location where there's knowing illegal drug use going on, you've got a criminal case going on, and trying to reintegrate?"

For all these reasons, the district court did not abuse its discretion by denying Father's motion for a new trial based on the hair follicle testing Father undertook after the trial.

Having found no abuse of discretion, we find the district court did not err in terminating Father's parental rights.

Affirmed.