NOT DESIGNATED FOR PUBLICATION

Nos. 119,654
119,655

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of S.R. and T.R.,
Minor Children.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed March 1, 2019.
Affirmed.

*Regine L. Thompson*, of Thompson & Thompson, P.A., of Scandia, for appellant natural father.

*Robert A. Walsh*, county attorney, and *Katie J. Schroeder*, of Schroeder Law Office, LLC, of
Beloit, guardian ad litem, for appellee.

Before POWELL, P.J., LEBEN, J., and KEVIN BERENS, District Judge, assigned.

PER CURIAM: The Cloud County District Court terminated the parental rights of
C.R. (Father) to his two children, T.R. (born in 2013) and S.R. (born in 2015). Father
now appeals, arguing that he did not have the opportunity to participate in reintegration
tasks, reasonable efforts were not made to rehabilitate the family, and the district court
abused its discretion by terminating his parental rights. After a review of the record, we
affirm.

FACTUAL AND PROCEDURAL HISTORY

In July 2017, the Kansas Department for Children and Families (DCF) initiated an
assessment for services for T.R. and S.R. following a report that R.C. (Mother) needed

1

substance abuse treatment. At the time of the referral, the maternal grandmother was supposed to provide primary care for the children while using the former foster parents for respite care. However, the foster parents were caring for the children at least 50% of the time with no authority to seek any necessary services for them. At the conclusion of the assessment, DCF recommended the State file child in need of care (CINC) petitions and place the children in DCF custody for out-of-home placement. Once the State filed the petitions, St. Francis took over case supervision.

Because assessments for services only evaluate the children's residence, DCF did not contact Father, who, at the time, was incarcerated at the Norton Correctional Facility. DCF knew from its history with the family that incarceration and negative contact with law enforcement had been an ongoing concern with Father. Father remained incarcerated until January 19, 2018, but attended the October 19, 2017 adjudication hearing by telephone and provided an oral no-contest statement. Father declined to be transported to the disposition hearing as he did not want to be stuck in county jail for 2 days for a 10-minute hearing. The district court accepted Father's and Mother's no-contest statements and found T.R. and S.R. were children in need of care. The district court ordered that the children remain in DCF custody for out-of-home placement.

Taylor Sitton, the St. Francis case manager, arranged a phone call with Father on November 21, 2017. During the phone call, Sitton informed Father that she would recommend a permanency hearing 30 days after disposition, during which the district court would determine whether reintegration was still a viable option. Father expressed a desire toward reintegration upon release, and Sitton sent him the case plans. She emphasized the importance of him contacting her immediately upon release and encouraged him to attend the hearing so they could meet and go through initial paperwork. However, he saw no reason for attending and said it would be very hard on him.

In January 2018, Father was paroled to his father's home. Father expressed doubts about whether he could be successful there because he knew too many people and believed returning was setting himself up for failure. In fact, during his six weeks in the community, Father relapsed almost immediately and failed to contact Sitton. Sitton attempted to contact Father, but her attempts were unsuccessful. Father also failed to attend the permanency hearing in February 2018; his counsel requested a continuance, insisting Father wanted to work the case plans but had not yet contacted Sitton. The district court denied the request, stating Father had not taken a very strong interest in the case. In March 2018, Father's probation was revoked resulting in him serving his underlying six-month sentence.

At the permanency hearing, the district court found that reintegration was no longer a viable option. Sitton reported the children were flourishing in their foster home and recommended they remain in DCF custody for out-of-home placement. The district court ordered the State to file a petition for termination of parental rights within 30 days.

When Sitton visited Father in jail on April 12, 2018, he admitted he violated his probation by using methamphetamine. He insinuated that use was inevitable when he returned to the area. He claimed he wished he could have visited the children and became emotional when Sitton showed him pictures of them. She informed Father of the termination hearing date and time and her recommendation to terminate his parental rights. Though emotional, he reportedly understood that he was no longer an option for the children because of his incarceration but wished Mother could have another chance.

The district court held the termination hearing on April 23, 2018. Father and Mother contested the termination of their parental rights due to the timing of the case. Father complained that he only had six weeks to work the case plans and his sentence at that time was only six months. Father contended he had not had a chance to get on his feet. Mother had struggled with drug addiction since before the children were born and

3

argued that she too had not had enough time to show the district court that her sobriety and lifestyle changes were permanent.

The district court found by clear and convincing evidence that Mother and Father were unfit by reason of conduct or condition which rendered them unable to properly care for their children and that such conduct or condition was unlikely to change in the foreseeable future. The district court further found that the children had been in out-of-home placement most of their lives and, considering the children's physical, mental, and emotional health, termination of Mother and Father's parental rights was in the best interests of the children.

Father timely appeals. Mother did not appeal the termination of her parental rights so is not a party to this appeal.

DID THE DISTRICT COURT ERR IN TERMINATING FATHER'S PARENTAL RIGHTS?

Father contends the district court erred in terminating his parental rights. First, he argues the unfitness finding is unsupported by the record because he did not have an opportunity to participate in reintegration tasks and because DCF and St. Francis did not make reasonable steps to work with him. He also argues the district court abused its discretion by terminating his parental rights.

In order for the district court to terminate parental rights, the State must prove by clear and convincing evidence that (1) the parent is unfit and (2) the conduct or condition which renders the parent unfit is unlikely to change in the foreseeable future. K.S.A. 2018 Supp. 38-2269(a). The State also must prove, albeit only by a preponderance of the evidence, termination is in the best interests of the child. K.S.A. Supp. 38-2269(g)(1); see *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014).

4

In reviewing a district court's decision terminating parental rights, we must consider "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence," that the parent's rights should be terminated. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). Clear and convincing evidence is "an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt." 286 Kan. at 691. We do not reweigh the evidence, judge the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

Under K.S.A. 2018 Supp. 38-2269(b), the following nonexclusive factors are among those that can be considered to determine a parent's unfitness:

"(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;

"(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

"(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;

"(4) physical, mental or emotional abuse or neglect or sexual abuse of a child;

"(5) conviction of a felony and imprisonment;

"(6) unexplained injury or death of another child or stepchild of the parent or any child in the care of the parent at the time of injury or death;

"(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and

"(9) whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed insubsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months

5

beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home."

Further, K.S.A. 2018 Supp. 38-2269(c) requires that

"when a child is not in the physical custody of a parent, the court shall consider, but is not limited to, the following:
    (1) Failure to assure care of the child in the parental home when able to do so;
    (2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;
    (3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home; and
    (4) failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay."

Any single one of the above factors alone may establish grounds for the termination of parental rights. K.S.A. 2018 Supp. 38-2269(f).

"A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008).

Here, the district court found Father unfit based on seven factors:

- K.S.A. 2018 Supp. 38-2269(b)(3): Father's drug addiction caused him to be unable to care for the children;
- K.S.A. 2018 Supp. 38-2269(b)(5): Father had been convicted of a felony and imprisoned;

6

- K.S.A. 2018 Supp. 38-2269(b)(7): Reasonable efforts by appropriate public or private child caring agencies had been unable to rehabilitate the family;

- K.S.A. 2018 Supp. 38-2269(b)(8): There had been a lack of effort on the part of Father to adjust his circumstances, conduct, or conditions to meet the needs of the children;

- K.S.A. 2018 Supp. 38-2269(c)(2): Father failed to maintain regular visitation, contact, or communication with the children;

- K.S.A. 2018 Supp. 38-2269(c)(3): Father made no steps to achieve the case plans' goal of reintegration; and

- K.S.A. 2018 Supp. 38-2269(c)(4): Father failed to pay a reasonable portion of the cost of care for the children.

On appeal, Father appears to challenge the application of only two factors towards the finding of unfitness: K.S.A. 2018 Supp. 38-2269(c)(3)—his failure to carry out a reasonable plan directed toward the reintegration of the children back into the home—and K.S.A. 2018 Supp. 38-2269(b)(7)—DCF's and St. Francis' efforts to rehabilitate the family. Because any one or combination of the remaining five factors is sufficient to uphold the district court's unfitness finding, we conclude that sufficient evidence supports the district court's decision. Nevertheless, as we explain below, Father's arguments on the points he raises lack merit as well.

A.    *K.S.A. 2018 Supp. 38-2269(c)(3): Failure to carry out the reintegration plan*

Father first argues that because he was incarcerated for most of the case there was no clear and convincing evidence supporting the district court's finding that he failed to carry out a reasonable plan directed toward the reintegration of the children. Father asserts that he was not a placement option while incarcerated or upon his release so no reasonable attempt to integrate the children with him was made. But the evidence

7

supports the district court's finding that he failed to carry out a reasonable plan directed toward reintegration.

Although he was not a placement option due to his incarceration, Father fails to accept any accountability for the extent of his incarceration. Father was to be released in September 2017; however, his release date was moved back until January 2018 after he received disciplinary sanctions while in prison. He complains that he was arrested again in March but fails to acknowledge that his arrest was due to his methamphetamine use. While he accurately argues he had six weeks to work toward reintegration, the short timeframe was due to his choices. Father had copies of the case plans, and he knew the tasks he needed to accomplish. In six weeks, he could have started working toward reintegration, but he chose not to contact St. Francis and he chose to violate his probation. In fact, throughout the pendency of this case, Father demonstrated that reintegration was not a priority for him. In addition to having disciplinary problems while incarcerated which resulted in delayed release dates, he refused transport to hearings because he claimed it was an inconvenience to him; he relapsed almost immediately upon his release from prison, resulting in his reincarceration; he failed to attend the permanency hearing during the time he was out of custody; and he never contacted Sitton.

Father had an opportunity to work toward reintegration and chose not to. Therefore, the district court properly found that Father had failed to carry out a reasonable plan approved by the district court directed toward the integration of the children into a parental home.

B.      *K.S.A. 2018 Supp. 38-2269(b)(7):  Agencies' reasonable efforts to rehabilitate the family*

Father also claims that the relevant agencies failed to engage in reasonable efforts to rehabilitate the family. However, Father's claim that DCF should have contacted him

8

regarding the assessment for services mischaracterizes the nature of the assessment. Heather Mosher, the DCF social worker who conducted the assessment, testified that the assessment for services was to determine whether services could be put in place for the residential parent. DCF recommended a CINC petition to provide oversight into the situation and to aid the foster parents while the children were in their care. Once the State filed the petition, St. Francis took over supervision and DCF played no further role in case management.

Father complains that Sitton only had one phone call with him during the pendency of the case. During that phone call, Sitton encouraged Father to attend the next hearing so she could review paperwork with him and discuss the steps toward reintegration. However, it was Father who chose not to attend claiming it would be "very hard on him." Sitton also emphasized the importance of Father contacting her immediately upon release so he could begin engaging in reintegration services. Sitton even mailed him the case plans, allowing Father to be aware prior to his release what tasks he needed to work on for reintegration. Upon Father's release from prison, Sitton attempted to obtain his contact information through Mother and the grandmother but was unsuccessful. She obtained a phone number from Father's counsel but was unable to reach him.

The record shows that it was Father who failed to make any effort to work on his case plans. Father had the case plans upon release and knew what he should have been doing. He had Sitton's contact information and knew the significance of contacting her immediately upon release. He chose to accept excuses of no transportation or no phone over making any effort. St. Francis made the effort and attempted to engage Father in reintegration services, but his incarceration and failure to contact the agency presented obstacles to St. Francis' efforts at rehabilitating the family. K.S.A. 2018 Supp. 38-2269(b)(7) only requires *reasonable* efforts by the agency. When the agency is met with resistance, it is limited in what it can accomplish. The district court did not err in

9

determining St. Francis had made reasonable efforts to rehabilitate the family and such efforts failed. The district court's unfitness findings are supported by clear and convincing evidence.

C.      *Termination of Father's parental rights*

Finally, Father contends the district court abused its discretion in terminating his parental rights.

Because the district court hears the evidence directly, it is in the best position to determine the best interests of a child, and an appellate court cannot overturn it without finding an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010. An abuse of discretion occurs when the district court acts in an unreasonable, fanciful, or arbitrary manner or when its decision is based on an error of fact or an error of law. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013). In considering termination, we are to give primary consideration to the child's physical, mental, and emotional needs. K.S.A. 2018 Supp. 38-2269(g)(1).

Father basically repeats his earlier arguments contesting the district court's unfitness findings. In fact, his arguments really appear to be a challenge to the district court's finding that his unfitness was unlikely to change for the foreseeable future.

In determining whether there is clear and convincing evidence to support the district court's finding that the conduct or condition rendering Father unfit is unlikely to change in the foreseeable future, we consider whether a condition is likely to change in the foreseeable future from the perspective of the child and not the parent. See, e.g., *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re C.C.*, 29 Kan. App. 2d 950, Syl. ¶ 2, 34 P.3d 462 (2001). Consequently, efforts at rehabilitation or reintegration must

proceed promptly to a successful conclusion. See *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002). Parental unfitness can be judicially predicted from a parent's past history. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

Again, Father claims his incarceration prevented the district court from being able to sufficiently determine whether his conduct or condition was likely to change in the foreseeable future. He complains he was only in the community for six weeks and did not receive the case plans until well after the meetings took place. As we have already explained, Father received the case plans prior to his release from prison. Accordingly, he could have started working on them upon release. His failure to make any progress in the reintegration tasks had nothing to do with when he received the case plans and everything to do with his choices.

Even though Father argues that six weeks in the community was not long enough for the district court to determine whether his conduct or condition was likely to change, his conduct during that time and the previous CINC case constitute sufficient grounds to support the district court's finding. Mosher testified that both T.R. and S.R. were children in need of care at birth and had remained in out-of-home placement until April 2017. During their initial cases, DCF was aware that Father had been in and out of jail and was not allowed around the children because of his history of negative law enforcement contact. Having taken judicial notice of the previous CINC cases and Father's criminal history, the district court was aware of the ongoing concerns of Father's conduct or condition. Additionally, in the six weeks during which Father could have worked toward reintegration, he instead began using methamphetamine again and returned to jail for a six-month sentence.

Father appears content to use his incarceration as an excuse for doing nothing to work toward reintegration and for taking no responsibility for his actions. He would have only been incarcerated for one month at the beginning of this case had he made better

11

choices. Instead, he received a disciplinary report in Norton, extending his incarceration four months, and violated his probation which required him to serve his underlying six-month sentence. Father has demonstrated that his conduct was not likely to change in the foreseeable future as he continues his criminal activity. And such conduct has affected his condition, creating an incarceration revolving door effect. There was sufficient evidence to support the district court's findings that Father's unfitness was unlikely to change in the foreseeable future.

As Father makes no persuasive arguments as to why it was not in the children's best interests to terminate his parental rights, the district court did not abuse its discretion by doing so.

Affirmed.